UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

UNITED STATES OF AMERICA

    -against-

JACOB ALEXANDER, a/k/a "Kobi Alexander,"

    Defendant.
-----------------------------------------------------------------X

MEMORANDUM & ORDER

06-CR-628 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

On August 24, 2016, the court held a hearing in this case to consider Defendant Jacob Alexander's application for bail pending sentencing. (Aug. 24, 2016, Min. Entry; see Aug. 22, 2016, Ltr. ("Bail Appl.") (Dkt. 13).) At the hearing, the court orally DENIED Defendant's application, finding that he had not met his burden of showing, by clear and convincing evidence, that he was not a flight risk. (Aug. 24, 2016 Min. Entry; see Order (Dkt. 20).) This Memorandum and Order more fully sets out the reasons for the court's denial of bail.

**I.    BACKGROUND**

On October 11, 2006, Defendant was charged by a 33-count superseding indictment for his role in a securities fraud scheme that involved backdating options at Comverse Technology Inc. ("Comverse"). (S-1 (Dkt. 4).) Comverse was a publically traded corporation that provided software systems, and Defendant was its founder, Chief Executive Officer, and Chairman of its Board of Directors. (Id. ¶¶ 1-3.) The Superseding Indictment charged Defendant with the following crimes: conspiracy to commit securities fraud, mail fraud, and wire fraud, in violation of 18 U.S.C. § 371; mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1341; securities fraud, in violation of 18 U.S.C. § 1348 and 15 U.S.C. § 78; money laundering, in violation of 18 U.S.C. §§ 1956 and 1957; obstruction of a criminal investigation

through bribery, in violation of 18 U.S.C. §§ 1510(a) and 3551; and obstruction of an official proceeding through witness tampering, in violation of 18 U.S.C. §§ 1512(b)(1) and 3551. (See id. ¶¶ 50-79.)

On June 21, 2006, as the Government was nearing the conclusion of its investigation into this scheme, Defendant travelled with his family to Israel. (Ltr. Opposing Def.'s Ltr. Appl. ("Gov't's Opp'n") (Dkt. 17) at 3.) According to the Government, Defendant's lawyer at the time advised the Government that Defendant would return to the United States on July 28, 2006, to engage prosecutors in a discussion of the facts of the case. (Id. at 4.) However, Defendant did not return, and subsequent investigation revealed that Defendant had flown to Namibia instead. (Id.) The Government maintains that while Defendant was in Israel, he wired tens of millions of dollars out of the United States and later tried to transfer $12 million but was thwarted by the Government's seizure of his U.S. bank accounts. (Id.) Despite the subsequent indictment in New York, Defendant remained in Namibia for the past decade, during which time he engaged in a years-long challenge to extradition proceedings. (Id. at 5.)

On August 16, 2016, the court received a letter from the Government, indicating that the parties had reached an agreement to resolve this case. (See Ltr. Regarding Status Update (Dkt. 7) (filed under seal).) According to the agreement, Defendant would waive his right to an extradition inquiry in Namibia, return to the United States, and plead guilty to a superseding information. (Id. at 1.) Pursuant to a negotiated plea agreement, the Government agreed to recommend up to a three-level reduction in Defendant's United States Sentencing Guidelines offense level for acceptance of responsibility, on the condition that Defendant demonstrate acceptance of responsibility and plead guilty within 48 hours of his return to the United States. (See Plea Agreement (Dkt. 21).)

On August 24, 2016, Defendant appeared before the court, where he waived indictment and pleaded guilty to a one-count superseding information charging him with securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 18 U.S.C. §§ 2 and 3551, with a statutory maximum prison term of ten years. (See Waiver of Indictment (Dkt. 18); Superseding Information (Dkt. 19).) After Defendant pleaded guilty, defense counsel presented a proposed bail package and argued in favor of bail pending sentencing. (See Bail Appl.) The Government presented its arguments in opposition to bail. (See Gov't's Opp'n.)

Defendant proposed the following bail conditions: (1) a $25 million personal recognizance bond, secured by $10 million in cash and signed by Defendant's sister, Dr. Shaula Alexander Yemini, and his wife, Hana Alexander; (2) surrender of Defendant's passport and a travel restriction limiting Defendant to the Southern and Eastern Districts of New York; and (3) regular reporting to Pre-Trial Services on a schedule to be determined by the court. (Bail Appl. at 1-2.) Defendant is 64 years old and an Israeli citizen. (Id. at 2.)

## II. LEGAL STANDARD

Federal law disfavors bail for defendants pending the imposition of sentence after pleading guilty. See United States v. Abuhamra, 389 F.3d 309, 318 (2d Cir. 2004). According to the Bail Reform Act, the court "shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the [court] finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released[.]" 18 U.S.C. § 3143(a). In overcoming the presumption in favor of detention in these situations, the burden of proof rests with the defendant. See Abuhamra, 389 F.3d at 319 (citing Fed. R. Crim. P. 46(c)).[1]

---

[1] At the hearing and in a footnote in his bail application, Defendant takes some issue with the bail standard set forth in 18 U.S.C. § 3143(a), noting that "the 'clear and convincing evidence' standard . . . is applicable only because Mr.

3

## III. DISCUSSION

In support of his bail application, Defendant argues that he has a "life-long record of business success, philanthropic work, and a superb military record as an officer of the Israel Defense Force[,]" and that, therefore, he poses no danger to the community. (Bail Appl. at 2.) Next, he argues that his sister and wife "exercise substantial 'moral suasion' over [him] such that he would not saddle them with $15 million in debt" by fleeing. (Id. at 1 n.1.) Third, Defendant maintains that "having agreed to return from Namibia and plead guilty, there is no country for [him] to go to in the unlikely event he does not appear for sentencing." (Id. at 3.) Fourth, Defendant argues that "it bears noting that individuals who return to the United States after extradition was sought are routinely granted bail, . . . includ[ing] defendants who . . . returned after having lost their attempts to avoid extradition." (Id. at 4.) Defendant maintains that he "does not represent the extraordinary case that should deviate from this practice." (Id.)

In opposition, the Government argues that Defendant has failed to present clear and convincing evidence that he does not pose a flight risk, especially in light of the great lengths to which Defendant has gone to avoid prosecution over the past ten years. (Gov't's Opp'n at 6.) The court agrees.

The primary issue here is not whether Defendant would pose a risk to the public; the court accepts Defendant's contention that he poses no such risk. Instead, the court is strongly

---

Alexander agreed to plead guilty at his initial appearance. Were the initial appearance not combined with his plea allocution, Mr. Alexander would be entitled to the presumption of bail under the least restrictive conditions necessary to 'reasonably assure' his appearance and the safety of the community." (Bail Appl. at 2 n.4 (citing 18 U.S.C. § 3142(c)).) This is true. However, by pleading guilty Defendant has ceded certain liberty expectations, such as his interest in avoiding punitive pre-trial detention. See Abuhamra, 389 F.3d at 318-19 (finding that once a defendant has been found guilty, "the substantive interest in avoiding punitive detention essentially disappears, and any continued expectation of liberty pending formal sentencing depends largely on statute"). In comparison, the Government has a significant interest in detaining a defendant who has pleaded guilty, in order to ensure that he appears for sentencing, and the Bail Reform Act's burden shifting accounts for that heightened interest. Ultimately, the court notes that Defendant appears to concede that the "clear and convincing evidence" standard of § 3143(a) applies to his case, and the court has reviewed his application under that standard.

influenced by the fact that Defendant already has evaded prosecution by fleeing the United States for a country with which he had no significant ties. Furthermore, he did this at great personal expense and without regard for the wellbeing of his family. While Defendant claims that he would never saddle his sister and his wife with $15 million, he has acted selfishly and foolishly before. Moreover, the Government estimates that Defendant and his wife together have a net worth in excess of $100 million. While $25 million might be enough to secure the appearance of many a defendant, the court is not convinced that such a sum would prevent this defendant from fleeing again, should he determine that doing so is in his own best interests. The court also notes that Defendant is not a United States citizen, and the Government maintains that he has no intention of residing in the United States after the conclusion of this case. (See Gov't's Opp'n at 6.) See also United States v. Zarrab, No. 15-CR-867 (RMB), 2016 WL 3681423, at *8 (S.D.N.Y. June 16, 2016) (denying bail and finding persuasive the defendant's lack of ties to the United States, his significant wealth, and his extensive international travel, including ties to countries without extradition). The court therefore agrees with the Government that Defendant "could find his next Namibia" if he decides that the risk of a harsh sentence is too great for him to face. (Gov't's Opp'n at 6.)[2] Finally, the court rejects Defendant's contention that his situation is comparable to that of other defendants who have been released on bail after contesting extradition. It is not Defendant's effort to contest extradition that the court finds most probative to its inquiry—rather, it is Defendant's decision to flee to Namibia in the first place.

---

[2] As set forth in the Plea Agreement, the Government has calculated Defendant's Guideline sentence range to be well in excess of the 120-month statutory maximum, and Defendant has agreed not to appeal or otherwise challenge a sentence of 120 months or less. (See Plea Agreement ¶¶ 1-4.) Therefore, while the court has not yet determined an appropriate sentence in this case, Defendant faces the potential of a 120-month (ten year) prison term.

## IV. CONCLUSION

Having carefully considered Defendant's proposed bail package, the court finds that Defendant has not presented clear and convincing evidence that he is not a flight risk. Considering Defendant's prior conduct and significant wealth, and well as the length of his potential prison term, the court finds that detention is necessary to ensure Defendant's appearance at sentencing. Accordingly, Defendant's application for bail pending sentencing is DENIED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
August 25, 2016

NICHOLAS G. GARAUFIS
United States District Judge